**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANA GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>GOODWILL INDUSTRIES OF SOUTHEASTERN WISCONSIN, INC.,<br><br>Defendant. | ) | Case No. 26-cv-12566<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, ANA GARCIA, by and through her counsel, Jeffrey Law Office, LLC, and complains of Defendant GOODWILL INDUCTRIES OF SOUTHEASTERN, INC., and states as follows:

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

## JURISDICTION & VENUE

1. This action is brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was hired, employed, and harmed by Defendant in this District.

## PARTIES

3. Plaintiff, ANA GARCIA ("Plaintiff"), was at all times relevant to this suit an adult with disabilities, residing in Waukegan, Illinois. At all times relevant, Plaintiff was employed by Defendant in this District. Plaintiff was hired, employed, and harmed by Defendant in this District.

4. Defendant, GOODWILL INDUSTRIES OF SOUTHEASTERN WISCONSIN, INC. ("Defendant"), is duly organized and doing business in Illinois. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant hired, employed, and harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about April 17, 2026, Plaintiff timely filed a Charge of Discrimination alleging disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2026-06378 against Defendant.

6. On July 16, 2026, Plaintiff received the EEOC's Notice of Right to Sue.

7. Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

8. On or about May 18, 2017, Plaintiff Ana Garcia began employment with Goodwill in food service. She worked in the AbilityOne program, including assignments at Galley 7111 and later Galley 7116 at Naval Station Great Lakes. She satisfactorily performed her assigned duties, generally working ten-hour shifts, four days weekly.

9. From 2021–2023, Plaintiff communicated medical restrictions and accommodation needs to AbilityOne/Workforce contacts. In or about February 2021, a physician's note was delivered to Paula and a meeting with Jonathan, Paula, and an interpreter; in April 2021, there were communications regarding restroom and work-restriction difficulties. Plaintiff's restrictions included medically necessary seated breaks and frequent restroom access.

10. Since January 2023 and thereafter, Plaintiff began working with crew leader Dannell Young at Galley 7111 and subsequently at Galley 7116. Young repeatedly criticized her medically necessary breaks and restroom use, directed her to continue working when she requested rest, and discouraged Alejandra Flores from assisting with repetitive table-cleaning duties.

11. On October 26, 2024, while taking a break approved by an assistant manager, Plaintiff heard Dannell Young, Margarita Rivera, and Alejandra Flores criticize her restrictions, frequent restroom use, and inability to perform every position, call her lazy, and refuse assistance cleaning tables.

12. Further, Rivera monitored Plaintiff's restroom use and pressured her to hurry.

13. Plaintiff reported concerns to supervisor Ashley, known as "Ash," without effective relief.

14. On October 28, 2024, Plaintiff submitted a written complaint to Henry, an AbilityOne Workforce caseworker, about the October 26th conduct, requesting intervention and review of available camera or audio evidence.

15. On January 25, 2025, at approximately 10:23 a.m., Plaintiff asked crew leader Dannell Young for a medically necessary break and was told to wait. She later requested a second break because of physical symptoms and was again denied. Plaintiff sat down because she felt

unwell, after which Young allegedly shouted profanity and called her lazy. Plaintiff reported the incident to Henry.

16. On or about May 19–20, 2025. Plaintiff wrote Henry about difficulties with lifting, pushing, pulling, bending, and obtaining restroom breaks and assistance. She identified restrictions including lifting no more than ten pounds and avoiding kneeling, squatting, pushing, pulling, and bending at the waist. On May 20th, Henry advised that his position had been eliminated and he forwarded her message to Workforce management.

17. On June 10 and August 16, 2025, Plaintiff complained to AbilityOne caseworker Anna about bullying, false reports, insufficient help, and limitations involving Alejandra Flores and Margarita Rivera. Anna said she would forward the complaint to Workforce management. Plaintiff attempted to contact Anna again on August 16th.

18. On August 27, 2025**,** Plaintiff's accommodations addressed restroom access, breaks, notification to management or crew leaders, and work assignments.

19. On or about September 5, 2025, Plaintiff felt weak and experienced knee and foot pain while working; she sat while continuing work. Assistant manager Catherine Brehm ("Cathy") treated her angrily and challenged her seated work. On September 6th, Brehm entered the restroom looking for Plaintiff and told her to hurry.

20. On September 10, 2025, Plaintiff complained in writing that Goodwill required her to clock out for medically necessary breaks although she believed her written accommodation did not impose that condition. She requested a written policy explanation and estimated approximately $71.00 in lost wages over eight workdays.

21. On September 13, 2025, Brehm followed or checked on Plaintiff during restroom visits twice, telling her to hurry and return to cleaning tables. On September 20th, Brehm required

Plaintiff to tell coworkers when she used the restroom and at times imposed a five-minute limit, despite Plaintiff's explanation of her medical needs and privacy concerns.

22. During September–November 2025, Plaintiff observed other workers, including Alejandra Flores, sitting, using phones, or taking breaks without clocking out on dates, including on September 26 or 27, October 8, October 16, and November 1. Goodwill nonetheless required her to clock out for disability-related breaks and reduced her wages.

23. On December 12, 2025, at approximately 4:45-5:00 a.m., Brehm rushed Plaintiff while she was using the restroom. On December 13th, Brehm knocked loudly on the restroom stall and publicly refused Plaintiff access to fountain water and told her to drink from a handwashing sink, despite Plaintiff's reported need for hydration.

24. On December 19, Brehm pressured Plaintiff to hurry while using the restroom despite Plaintiff's explanation of her condition. On January 10, 2026, Brehm again reportedly came to check on Plaintiff in the restroom.

25. On January 23, 2026, Plaintiff requested a medical break because she felt weak, but Brehm denied it. On January 24th, Brehm ordered Plaintiff to clock out and leave because she wore thermal pants beneath her uniform for arthritis-related pain, and issued a written warning witnessed by Timothy Kerpan; Plaintiff did not receive a copy. On January 26th, Plaintiff observed coworker Jasmin wearing different-colored pants without similar discipline.

26. Plaintiff continued to have anxiety from interactions with assistant manager Betty Bauers. On February 18th, Bauers reluctantly authorized a medical break, but crew leader Raelli Gloria ("Ely") yelled at Plaintiff for taking it while Bauers did not intervene. Plaintiff observed other employees sitting without clocking out while manager Theresa Gordon allegedly threatened

to treat Plaintiff's unclocked medical breaks as time theft. On February 20th, Brehm confronted Plaintiff over a hairnet already on her head.

27. On February 27, 2026, Brehm sent Olivia Bueno to check on Plaintiff in the restroom. On March 7th, Brehm changed her duties contrary to bending or mopping restrictions, and Brehm and Flores mocked her. After Plaintiff requested privacy to telephone Workforce, Brehm sent Flores to check on her.

28. On March 11, 2026, after supervisor Ashley ("Ash") authorized a medical break, assistant manager Timothy Kerpan monitored Plaintiff, sent another worker to interrupt her, and angrily demanded table cleaning when she finished. At approximately 11:44 a.m., Plaintiff again requested a break, but Kerpan insisted that she first clean additional tables notwithstanding other available workers.

29. At approximately 5:45 a.m. on March 14, 2026, Brehm assigned Plaintiff to another building despite a restriction against working in a different galley. On March 18th, Plaintiff advised assistant manager Juan Soto of her restroom and break needs; around 7:20 a.m., Soto approached her after a restroom visit in a manner she perceived as monitoring.

30. On March 28th, Brehm questioned Plaintiff about clocking out before obtaining hot tea while other workers rested. On April 1st, crew leaders Ely and Rick Domingo confronted her about restroom use at Galley 7122, while another worker was not similarly directed to leave.

31. On April 15th, Plaintiff messaged HR representative Kevin Bumgarner about a February 19th workplace incident, emergency care, accident reporting, and insurance or workers' compensation information.

32. Plaintiff signed an EEOC charge dated April 13, 2026, and received by EEOC on April 17, 2026, identifying disability discrimination and retaliation as continuing and ongoing. The

charge describes denial of medical breaks, restroom monitoring, a work-location reassignment contrary to restrictions, and notice to management and HR.

33. Plaintiff complained to Workforce manager Katrina Centerbury about being assigned to another work area despite restrictions. Centerbury responded that HR instructed the galley not to "level-load" Plaintiff pending an ADA committee meeting and physician clarification. On July 27th, after Plaintiff reported continued level-loading, Centerbury reiterated that Plaintiff should refuse it until further notice.

34. On August 11th, Plaintiff raised an FMLA issue and Centerbury reported reviewing leave-administration steps with HR employee Meg Broussard. On September 3rd, Centerbury forwarded another complaint to AbilityOne caseworker Sydney. On September 15th, Plaintiff complained in writing to Meg, Sydney, and Katrina about disability-related clock-out requirements, disparate break treatment, and wage loss of about $71.00 every two weeks. On September 17th, she complained about monitoring and interference by Flores and Aleida Ruiz Guerra.

35. On October 8, 2026, assistant manager Chakeyma publicly yelled at Plaintiff at Galley 7116; when Plaintiff requested that future discussions occur privately, Chakeyma became upset and directed her to leave the office. As a result, Plaintiff suffered worsening anxiety, depression, migraines, and physical symptoms.

36. Throughout the relevant period, Plaintiff made repeated complaints to managers, HR, and AbilityOne/Workforce personnel, including Theresa Gordon, Maurice Whitehorn, Kevin Bumgarner, Katrina Centerbury, Ashley Gongora, and other representatives, without effective correction. Defendant denied or obstructed medically necessary breaks and restroom access, made changes in Plaintiff's duties despite restrictions, made humiliating comments, conducted

surveillance, enforced unequal clock-out treatment, causing Plaintiff lost wages and worsening physical and emotional symptoms.

37. Because of Plaintiff's disabilities, Plaintiff was subjected to disparate treatment and discrimination.

38. Because Plaintiff reported discrimination, exercising a right and protected activity, she was subjected to escalated disparate treatment, and harassment.

## COUNT I — DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.

39. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

40. Defendant is an employer, as defined by the ADA.

41. Plaintiff has been diagnosed with Chronic Urethral Trigonites, Severe Anxiety, and Depression, all disabilities protected by the ADA.

42. Plaintiff satisfied the prerequisites of and was qualified to perform the essential functions of her job with or without reasonable accommodation.

43. The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

44. Nevertheless, Defendant discriminated against Plaintiff because she suffered from the aforementioned disabilities.

45. Similarly situated employees without a disability were treated more favorably by Defendant.

46. Therefore, Plaintiff suffered an adverse employment action by Defendant because of her disabilities.

47. Defendant's discrimination constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, ANA GARCIA, respectfully requests that this Court enter judgment in her favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;
B. Grant an injunction against the Defendant from violating ADA and to protect other employees with disabilities from such Civil Rights violations;
C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;
D. Order the Defendant to pay the Plaintiff compensatory and punitive damages;
E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;
F. Award the Plaintiff her reasonable attorney's fees and costs; and
G. Award such other and further relief as it is just and appropriate, including nominal damages.

**COUNT II — RETALIATION**
**AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et. seq.**

48. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

49. Defendant is an employer, as defined by the ADA.

50. Plaintiff has been diagnosed with Chronic Urethral Trigonites, Severe Anxiety, and Depression, all disabilities protected by the ADA.

51. Plaintiff satisfied the prerequisites of and was qualified to perform the essential functions of her job with or without reasonable accommodation.

52. The ADA prohibits discrimination against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. See 42 U.S.C. § 12112(a).

53. Nevertheless, Defendant discriminated against Plaintiff because she suffered from the aforementioned disabilities.

54. Similarly situated employees without a disability were treated more favorably by Defendant.

55. Therefore, Plaintiff suffered an adverse employment action by Defendant because of her disability.

56. Defendant's retaliation constitutes unlawful discrimination in direct violation of ADA.

WHEREFORE, Plaintiff, ANA GARCIA, respectfully requests that this Court enter judgment in her favor and against the Defendant as follows:

A. Declare, decree, and adjudge that the Defendant violated ADA;

B. Grant an injunction against the Defendant from violating ADA and to protect other employees with disabilities from such Civil Rights violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order the Defendant to pay the Plaintiff compensatory and punitive damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: October 14, 2026

/s *Antonio L. Jeffrey*
Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com